UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBA DIVISION

| | |
|---|---|
| **SERINA AGENT**<br>　　Plaintiff<br><br>vs<br><br>**BUFFALO VALLEY, INC.,**<br>　　Defendant | Case No.<br><br>Hon.<br><br>**JURY DEMAND** |

## COMPLAINT

### JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. §1331 (federal question), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*, and 28 U.S.C. §1343(a)(4) (protection of civil rights).

2. This Court has supplemental jurisdiction over state law claims under 28 U.S.C. §1367 in that they involve a common nucleus of operative facts with the federal claims and because the claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the U.S. Constitution.

3. Venue is appropriate in the Middle District of Tennessee under 28 U.S.C. § 1391(b)(2) as this is the judicial district in which a substantial part of the events or omissions giving rise to these claims occurred.

### PARTIES

1. Plaintiff Serina Agent is a citizen and resident of Petersburg, Marshall County, Tennessee who at all relevant times was an employee of Defendant Buffalo Valley, Inc. at its facilities located in Lewisburg, Tennessee.

2. Defendant Buffalo Valley, Inc. is a not-for-profit, public benefit, domestic corporation with its principal office at 501 Park Ave. S., Hohenwald, Tennessee and with a registered agent for service of process listed as Jerry Risner, 221 S. Maple St., Hohenwald,

1

Tennessee 38465-1815. Buffalo Valley, Inc. was incorporated in 1979 as a small community based alcohol and substance abuse treatment center and has since expanded to provide housing and supportive services for very low income, disabled and homeless residents in its service area. Buffalo Valley, Inc. also provides services for state Community Corrections Services and for the United States Office of Probation. It has facilities located in Hohenwald, Castalian Springs, and Lewisburg, Tennessee and employs at least 15 people.

**GENERAL FACTUAL ALLEGATIONS**

3. In or about May, 2012, Plaintiff began working for Defendant Buffalo Valley, Inc. ("Buffalo Valley") as a security guard. In addition to her security related duties, she also completed paperwork, passed out medications to patients/residents, awoke patients/residents and answered the telephone.

4. There were four facilities in and around the main office building located at 554 2nd Ave, Lewisburg, Tennessee and patients/residents resided at all four.

5. Sometime in August or September, 2012, Jerry Dixon was also hired by Buffalo Valley as a security guard. The first day on the job, Dixon grabbed Plaintiff's breasts and said they were soft and that he wanted "to fuck" her. He then put his hands on her breasts and buttocks. She told him to stop and leave her alone but he kept grabbing her. He then put his hand on Plaintiff's crotch. He also made statements like "let me lick you", "let me rub your titties", and "can I have sex with you".

6. Plaintiff left that facility and went to House No. 610 to get away from Dixon.

7. In or about August or September, 2012, Dixon again grabbed her breasts, crotch and buttocks and again Plaintiff told him to stop. Plaintiff left the facility and went to another adjacent facility to get away from him. In total, Dixon grabbed the plaintiff in a sexual way and by deliberating putting his hands on the sexual parts of her body three times.

8. When Plaintiff returned to House No. 534, Dixon threw a set of keys at her.

9. Plaintiff called Beau Herring, Site Manager, and complained about Dixon and the sexual harassment and said that she could not work with Dixon. Plaintiff also complained to John Smith, Security Team Leader, about the sexual harassment. Mr. Herring instructed

2

Case 1:13-cv-00133   Document 1   Filed 10/23/13   Page 2 of 6 PageID #: 2

John Smith to conduct an investigation but Mr. Smith never conducted any interviews of anyone nor obtained written statements from anyone.

10. Had Mr. Smith sought out and interviewed witnesses, he would have found several witnesses, such as Jeremy Hudson, who heard Dixon admit that he had asked the plaintiff to perform oral sex and had grabbed her breasts. Dixon himself admitted to Mr. Herring that he had inappropriately touched the plaintiff in a sexual way. Another employee, Ken Fuqua, would have also told Mr. Smith that Dixon had bragged about grabbing the plaintiff's breasts.

11. Mr. Herring told the plaintiff that he would call a meeting between him, Dixon, and her to discuss the issue but no such meeting ever took place. In fact, nothing was ever done about the harassment and Dixon was never counseled or otherwise disciplined.

12. Plaintiff felt uncomfortable working around Dixon and would avoid the facilities where he was at. She would have other employees pass out the medicines to patients/residents or would have other male employees escort her for protection.

13. After the plaintiff complained about the sexual harassment, she was removed from full time employment and put on a part time "call as needed" status without explanation by John Smith.

14. Over the next several months, Plaintiff would call in and leave messages asking when she would be called in to work. She never received any responses.

15. In or around November, December 2012 or January 2013, Plaintiff spoke with Chastity Blackwell, a supervisor at Buffalo Valley. Blackwell told her that at that time, she was still on the "board" listed as a part time, call-as-needed employee.

16. Later, another employee informed Plaintiff that she had been replaced by someone else. This was done without any explanation or notice to the plaintiff.

17. In or about December, 2012, Dixon sexually harassed another female employee and some female patients/residents and was finally terminated from Buffalo Valley.

18. In or about December 2012 to January 2013, Mr. Herring also gave a bad reference to a potential employer where Plaintiff was applying for a job.

19. Buffalo Valley does not have nor ever disseminated any sexual or work place harassment

policy nor did it ever post any Title VII type posters. Despite Plaintiff informing Beau Herring at her initial job interview that she was dyslexic and could not read very well, no one with Buffalo Valley management ever read any policies to her nor even verbally informed her of what to do if she was the victim of work place harassment.

## COUNT 1

### (THRA - Hostile Work Environment)

20. Defendant is a person as defined by the Tennessee Human Rights Act, T.C.A. § 4-21-102(14).

21. Defendant is an employer as defined by the Tennessee Human Rights Act, T.C.A. § 4-21-102(5).

22. The conduct of Defendant, as described herein, constitutes "discriminatory practices" as defined by the Tennessee Human Rights Act, T.C.A. § 4-21-102(4).

23. As a direct result of Defendant's discriminatory employment practices Plaintiff experienced harm, including humiliation, indignity, embarrassment and loss of pay.

## COUNT 2

### (THRA - Retaliation)

24. Plaintiff engaged in an activity protected by the Tennessee Human Rights Act, that is, complaining about sexual harassment in her workplace.

25. Defendant, through its policy makers, decision makers, supervisors and managers, had knowledge of the plaintiff's exercise of this protected activity.

26. Defendant took an employment action adverse to the plaintiff in retaliation for her protected activity, that is, reduction to part time, call-as-needed status, never calling her in to work, and ultimately removing her from the call-as-needed list. Defendant also retaliated by giving the plaintiff a bad job reference.

27. There is a causal connection between the protected activity and the adverse employment action which constituted unlawful retaliation in violation of the Tennessee Human Rights Act.

28. As a direct result of Defendant's discriminatory employment practices Plaintiff experienced harm, including humiliation, indignity, embarrassment and loss of pay.

## COUNT 3

### (TITLE VII - Hostile Work Environment )

29. Plaintiff is a member of a protected class, that is, female.

30. Plaintiff was subjected to unwelcome conduct of a sexual or sex-based nature.

31. The unwelcome conduct was sufficiently severe or pervasive to affect a term or condition of her employment.

32. Defendant engaged in, condoned, and ratified harassing and discriminatory conduct which resulted in a hostile work environment. Despite knowing of the discriminatory harassment against Plaintiff, Defendant failed to exercise reasonable care to prevent and promptly correct the complained of sexually harassing behavior even after Plaintiff complained of the harassment.

33. Additionally, Plaintiff suffered a tangible employment action after her complaint of sexual harassment, that is, reduction to part time, call-as-needed status, never being called in to work, and ultimately being removed from the call-as-needed list.

34. As a direct result of Defendant's discriminatory employment practices Plaintiff experienced harm, including humiliation, indignity, embarrassment and loss of pay.

## COUNT 4

### (Title VII - Retaliation)

35. Plaintiff engaged in activity protected by Title VII, that is, she complained of sexual harassment or rejected sexual advances.

36. Defendant, through its agents and decision makers, supervisors or managers, were aware of this protected activity.

37. Plaintiff suffered an adverse employment action, that is, reduction to part time, call-as-needed status, and other materially adverse actions such that a reasonable employee would have found the actions materially adverse and which would dissuade a reasonable worker from making or supporting a charge of discrimination.

38. There was a causal relationship between Plaintiff's protected activity and her reduction to part time and other materially adverse action taken by her employer.

39. As a direct result of Defendant's discriminatory employment practices Plaintiff

experienced harm, including humiliation, indignity, embarrassment and loss of pay.

Therefore, Plaintiff asks for the following:

1. A jury to try this cause;
2. Compensatory damages;
3. Punitive damages;
4. Back pay and front pay and other equitable relief the court deems proper;
5. Attorney's fees and cost of the litigation;
6. Such other relief as this court deems proper.

Respectfully submitted,

/s Jerry Gonzalez
Jerry Gonzalez (18379)
Attorney for Plaintiff
2441-Q Old Fort Parkway
No. 381
Murfreesboro TN 37128
615-360-6060
jgonzalez@jglaw.net